**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **ROGER COUCH** | ) | |
| *Plaintiff* | ) | |
| vs. | ) | Case No. 20-cv-2573 |
| | ) | |
| **SEALY MATTRESS MANUFACTURING** | ) | |
| **COMPANY, LLC** | ) | |
| *Serve Registered Agent*: | ) | |
| Cogency Global, Inc. | ) | **JURY TRIAL DEMANDED** |
| 2101 SW 21st Street | ) | |
| Topeka, KS 66604 | ) | |
| *Defendant* | ) | |

**COMPLAINT**

COMES NOW Plaintiff Roger Couch ("Plaintiff"), by and through his attorneys, to allege the following against Defendant Sealy Mattress Manufacturing Company, LLC ("Defendant").

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury of all triable issues alleged herein.

**DESIGNATION OF PLACE OF TRIAL**

Plaintiff designates Kansas City, Kansas as the place of trial.

**NATURE OF THE CLAIM**

1. In violation of The Americans with Disabilities Act, 42 USC §§ 12101 – 12213 ("ADA"), Defendant discriminated against Plaintiff based on its erroneous belief that he was an illegal drug user.

2. In violation of the ADA, Defendant retaliated against Plaintiff by threatening him for opposing what he reasonably believed was discrimination against himself based on being erroneously regarded as an illegal drug user.

3. Plaintiff seeks legal and equitable relief available under 42 U.S.C. §§ 12117(a), 12203(c), and 2000e *et seq*.

## PARTIES

4. **PLAINTIFF** is a male citizen of the USA domiciled in Missouri.

5. On or about April 30, 2019, Plaintiff applied for employment with Defendant.

6. At the time Plaintiff sought employment with Defendant, he was a "qualified individual" as defined in 42 USC § 12111(8) because he was an individual who could perform the essential functions of the job to which he applied with or without reasonable accommodation.

7. During the application and hiring process, Defendant erroneously concluded that Plaintiff was engaged in the use of illegal drugs, as contemplated by 42 USC § 12114(b)(3), thereby regarding Plaintiff as having a "disability" as defined by 42 USC § 12102(1)(C).

8. **DEFENDANT** is a corporation registered and authorized to do business in Kansas.

9. Defendant is now, and was at all times relevant to the allegations in this Complaint, a "person" as defined by 42 USC § 12111(7) because it was a limited liability company, which is an unincorporated organization.

10. Defendant is now, and was at all times relevant to the allegations in this Complaint, an "employer" as defined by 42 USC § 12111(5)(A) because it is a person engaged in an industry affecting commerce with 15 or more employees at all times during 2019 and 2020.

11. Defendant had more than 500 employees throughout 2019.

12. Defendant has had more than 500 employees throughout 2020.

## JURISDICTION & VENUE

13. This Court has original subject matter jurisdiction pursuant to 28 USC § 1331 because Plaintiff's claims arise under the ADA.

14. Defendant is subject to personal jurisdiction in Kansas because the acts and omissions alleged to be unlawful in this case took place in Kansas, the employment opportunity

that Plaintiff was unlawfully deprived of was located in Kansas at a facility where Defendant conducts substantial and ongoing business.

15. Venue is proper in this District pursuant to 28 USC § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

## ADMINISTRATIVE PROCEDURES

16. On May 13, 2019, Defendant offered Plaintiff employment. All acts alleged herein to be discriminatory or retaliatory occurred after that date.

17. On February 25, 2020, Plaintiff timely filed a Charge of Discrimination with the EEOC against Defendant, which was assigned Charge Number **563-2020-01282.** A copy is attached as **Exhibit A** and is incorporated herein by reference.

18. On August 14, 2020, the EEOC issued Plaintiff a Right-to-Sue Notice for Charge Number **563-2020-01282**. A copy is attached as **Exhibit B** and is incorporated herein by reference.

19. Ninety days from August 14, 2020 is November 12, 2020.

20. This lawsuit was filed on or before November 12, 2020.

## PARTICULARS

21. On or about April 20, 2018, Plaintiff applied for a job with Defendant as Assistant Transportation Supervisor. Defendant offered Plaintiff the position, but he turned it down and took a job at a different company.

22. During March 2019, Defendant reached out to Plaintiff to ask if he was interested in a Transportation Supervisor position with Defendant. At that time, Plaintiff was still employed by the other company.

23. On or about April 30, 2019, after several weeks of communication with Defendant, Plaintiff applied for the Transportation Supervisor job with Defendant.

24. On May 13, 2019, Defendant offered the Transportation Supervisor job to Plaintiff, which paid $74,000 annually plus benefits and included the opportunity to earn an annual bonus of 8% of his annual salary.

25. On May 13, 2019, Plaintiff accepted Defendant's job offer described above. Relying on that job offer, and confident that none of the conditions subsequent (drug screening and background check) would preclude him from being eligible for employment with Defendant, he notified his employer that he would be resigning.

26. On May 14, 2019 and May 20, 2019, Plaintiff underwent drug screenings by urinalyses at Defendant's request as part of its hiring process. The urinalyses were conducted at a facility chosen by Defendant. The urinalyses resulted in false positive test results.

27. On or about May 31, 2019, Defendant rescinded its job offer to Plaintiff based its conclusion that because of the positive drug test results, Plaintiff was actively using illegal drugs and therefore limited in his ability to perform the Transportation Supervisor job that was offered to him.

28. Plaintiff told Defendant that he was not an illegal drug user.

29. Plaintiff told Defendant that he might be showing a false positive because he had limited kidney function.

30. Plaintiff informed Defendant that he had been in the hospital during April 2019, and offered to obtain any drug testing results that were conducted during his hospital stay to show there were no drugs in his system at that time.

31. Plaintiff offered to take blood and hair tests at his own expense to prove he was not an illegal drug user.

32. Defendant refused Plaintiff's offer to take blood and hair tests at his own expense.

33. The facility that Defendant chose to conduct the urine analyses failed to follow their own policies or protocols and failed to notify Plaintiff of his rights to appeal the false positive results. Plaintiff informed Defendant that the facility failed to follow its own policies or protocols and informed Defendant that he thought he was being treated unfairly and denied the rights he was supposed to have under the facility's normal policies or protocols.

34. Plaintiff persisted in contacting Defendant to prove he was not an illegal drug user and to insist that he deserved to be retested since Defendant's drug testing agent did not follow its own policies or protocols, which was resulting in Plaintiff being denied employment by Defendant.

35. On or about June 10, 2019, Plaintiff received a phone call from Defendant instructing him to stop contacting Defendant.

36. On or about June 11, 2019, Plaintiff received a phone call from Defendant informing Plaintiff that Defendant was rescinding its job offer to Plaintiff regardless of whether he could provide negative drug test results.

37. On or about June 25, 2019, Plaintiff underwent a hair test for drugs, and the test results showed Plaintiff was not an illegal drug user.

38. Plaintiff is not, and has not been, an illegal drug user. Defendant erroneously regarded Plaintiff as being an illegal drug user.

39. At all times mentioned herein, before and after, the above described perpetrators were agents, servant and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, or their actions were expressly authorized or ratified by Defendant. Therefore, Defendant is liable for the actions of said persons and/or other perpetrators under all theories pled herein.

**COUNT I**
**AMERICANS WITH DISABILITIES ACT**
**Disability Discrimination**

40. Plaintiff incorporates by reference every other allegation made in this Complaint.

41. Plaintiff was a qualified individual under the ADA whom Defendant erroneously regarded as having a disability/being an illegal drug user.

42. Defendant regarded Plaintiff as having an impairment that precluded him from performing the job as Transportation Supervisor because it erroneously regarded him as an illegal drug user.

43. Defendant rescinded its job offer to Plaintiff and refused to hire him because it erroneously regarded him as being an illegal drug user.

44. The adverse employment actions alleged above directly and proximately caused Plaintiff to suffer damages, including lost wages, lost earning potential, lost benefits, emotional distress, humiliation, and frustration.

45. Defendant's discrimination against Plaintiff was done with malice or reckless indifference to Plaintiff's federally protected rights. Defendant is therefore liable for punitive damages in an amount sufficient to punish Defendant and to deter it and other employers from engaging in similar conduct.

46. Defendant, through its agents or employees, acted outrageously by engaging in discriminatory practices with malice or reckless indifference to Plaintiff's federally protected rights. Defendant is therefore liable for punitive damages in an amount sufficient to punish Defendant and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Plaintiff prays for judgment against Defendants on Count I of his Complaint, for a finding that she has been subjected to unlawful discrimination in violation of 42 U.S.C. § 12101 *et seq.*; actual, compensatory, and punitive damages; equitable relief; costs

expended; reasonable attorneys' and experts' fees provided by 42 U.S.C. § 2000e-5; and for such other relief the Court deems just and proper.

**COUNT II**
**AMERICANS WITH DISABILITIES ACT**
**Retaliation**

47. Plaintiff incorporates by reference every other allegation made in this Complaint.

48. Plaintiff engaged in protected activity opposing Defendant's decision to rescind its offer of employment to him and refusal to hire him based on its erroneous belief that he was an illegal drug user.

49. Plaintiff reasonably believed he was suffering adverse employment actions because Defendant erroneously regarded him as being an illegal drug user.

50. Defendant retaliated against Plaintiff by subjecting him to intimidating phone calls, prohibiting him from contacting them, and by refusing to consider Plaintiff for any position of employment regardless of Plaintiff's ability to produce negative drug test results.

51. The materially adverse acts alleged above directly and proximately caused Plaintiff to suffer damages, including lost wages, lost earning potential, lost benefits, emotional distress, humiliation, and frustration.

52. Defendant's retaliation against Plaintiff was done with malice or reckless indifference to Plaintiff's federally protected rights. Defendant is therefore liable for punitive damages in an amount sufficient to punish Defendant and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count II of his Complaint, for a finding that she has been subjected to unlawful retaliation prohibited by 42 U.S.C. 2000e *et seq*.; for actual, compensatory, and punitive damages; costs expended; reasonable

attorneys' and experts' fees provided by 42 U.S.C. 2000e-5; and for such other and further relief the Court deems just and proper.

**RALSTON KINNEY, LLC**

By: /s/ *Kenneth D. Kinney*
Thomas F. Ralston, D.Kan. #78212
Kenneth D. Kinney, D.Kan. #78544
4717 Grand Avenue, Suite 300
Kansas City, Missouri 64112
Telephone: (816) 298-0086
Facsimile: (816) 298-9455
Email: tom@rklawllc.com
Email: ken@rklawllc.com
**ATTORNEYS FOR PLAINTIFF**